Approved:

KEDAR S. BHATIA / REBECCA T. DELL / DEREK WIKSTROM
Assistant United States Attorneys

Before:   THE HONORABLE STEWART D. AARON
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x

**22 MAG 9613**

UNITED STATES OF AMERICA

    - v. -

RODNEY SMITH,
DENISE GANT,
EBONY SIMON,
PHYA SCOTT,
PRISCILLA JACKSON,
SHARON CHARLES,
YOLANDA LAWRENCE,
YOLANDA RATCLIFF, and
ZHANE RATCLIFF,

        Defendants.

        :
        :
        :
        :
        :
        :
        :
        :
        :
        :
        :
        :
        :
        :

**SEALED COMPLAINT**

Violation of
18 U.S.C. §§ 1343, 1349,
1028A, and 2

COUNTY OF OFFENSE:
NEW YORK

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      LAVALE JACKSON, being duly sworn, deposes and says that
he is a Special Agent with the United States Attorney's Office for
the Southern District of New York, and charges as follows:

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

    1.    From at least in or about June 2020 up to and including
at least in or about May 2021, in the Southern District of New
York and elsewhere, RODNEY SMITH, DENISE GANT, EBONY SIMON, PHYA
SCOTT, PRISCILLA JACKSON, SHARON CHARLES, YOLANDA LAWRENCE,
YOLANDA RATCLIFF, and ZHANE RATCLIFF, the defendants, and others
known and unknown, willfully and knowingly, did combine, conspire,
confederate, and agree together and with each other to commit wire
fraud, in violation of Title 18, United States Code, Section 1343.

2.     It was a part and object of the conspiracy that RODNEY SMITH, DENISE GANT, EBONY SIMON, PHYA SCOTT, PRISCILLA JACKSON, SHARON CHARLES, YOLANDA LAWRENCE, YOLANDA RATCLIFF, and ZHANE RATCLIFF, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

3.     From at least in or about June 2020 up to and including at least in or about May 2021, in the Southern District of New York and elsewhere, RODNEY SMITH, DENISE GANT, EBONY SIMON, PHYA SCOTT, PRISCILLA JACKSON, SHARON CHARLES, YOLANDA LAWRENCE, YOLANDA RATCLIFF, and ZHANE RATCLIFF, the defendants, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, SMITH, GANT, SIMON, SCOTT, JACKSON, CHARLES, LAWRENCE, YOLANDA RATCLIFF, and ZHANE RATCLIFF engaged in a scheme to obtain funds from the United States Small Business Administration ("SBA") through the SBA's Economic Injury Disaster Loan ("EIDL") Program by submitting false and fraudulent loan applications.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Aggravated Identity Theft)

4.     From at least in or about June 2020 up to and including at least in or about May 2021, in the Southern District of New York and elsewhere, RODNEY SMITH, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, SMITH used identifying information

belonging to other persons to work with others to submit fraudulent loan applications to the SBA in furtherance of the offenses charged in Counts One and Two of this Complaint.

(Title 18, United States Code, Sections 1028A and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.    I am a Special Agent with the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"), and have been in that position for over eight years. Before joining the USAO-SDNY, I was a Special Agent with the United States Department of Labor – Office of Inspector General for more than nine years. In both of these capacities, I have participated in numerous criminal investigations, including investigations into fraud and public corruption.

6.    This case arises from an investigation the USAO-SDNY, the Internal Revenue Service – Criminal Investigations ("IRS-CI"), and the SBA's Office of Inspector General ("SBA-OIG"), have been conducting into public employees who submitted or caused to be submitted fraudulent applications for SBA loans related to the COVID-19 pandemic. I have been personally involved in that investigation. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my participation in the investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

7.    At all times relevant to this Complaint, DENISE GANT, EBONY SIMON, PHYA SCOTT, PRISCILLA JACKSON, SHARON CHARLES, YOLANDA LAWRENCE, YOLANDA RATCLIFF, and ZHANE RATCLIFF, the defendants (together, the "Applying Defendants"), were employed by various New York City and New York State agencies, and one non-profit organization. Specifically, GANT, SIMON, SCOTT, YOLANDA RATCLIFF, and ZHANE RATCLIFF were employees of the New York City Police Department ("NYPD"), LAWRENCE was an employee of the New York City Human Resources Administration ("NYC HRA"), and JACKSON was an employee of the Metropolitan Transportation Authority

("MTA"). CHARLES worked as a director at a non-profit organization based in New York.

8.    As set forth below, between at least June 2020 and at least May 2021, the defendants engaged in a scheme to defraud the SBA and enrich themselves. RODNEY SMITH, the defendant, conspired with the eight Applying Defendants to submit fraudulent loan applications to the EIDL Program on behalf of the Applying Defendants (together, the "Fraudulent Applications"). The Fraudulent Applications contained materially false representations about the Applying Defendants' purported businesses. Fraudulent Applications were frequently similar to each other, in terms of the numbers of employees, amounts of revenue, and types of businesses falsely claimed in the applications. Based on the Fraudulent Applications, the SBA issued EIDLs to each of the Applying Defendants ranging from approximately $52,000 to approximately $60,000. In certain instances, the Applying Defendants communicated with SMITH before the Fraudulent Applications were submitted. In addition, after obtaining their loans, certain Applying Defendants transferred approximately $5,000 of their fraudulently obtained money to co-conspirators, including SMITH. In addition, SMITH's involvement in this scheme was not limited to the Fraudulent Applications; SMITH conspired to create at least 95 total EIDL applications suspected to be fraudulent, on behalf of numerous people including, but not limited to, the Applying Defendants.

## The SBA's EIDL Program

9.    Based on my training and experience, my review of information from the SBA's website, my review of information received from the SBA, and my communications with SBA employees, I know that:

        a.    The SBA is a federal agency that administers assistance to American small businesses. This assistance includes issuing certain loans, and guaranteeing loans issued by certain lenders, to qualifying small businesses. As relevant here, this assistance includes making direct loans to applicants through the EIDL program.

        b.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. Among other things, the CARES Act expanded the SBA's EIDL program, which provided small businesses with low-interest loans of up to $2 million prior to in or about May 2020,

and up to $150,000 between in or about May 2020 and in or about December 2021, in order to provide vital economic support to help overcome the loss of revenue small businesses experienced due to COVID-19. These loans were made directly by the SBA.

      c.    To qualify for an EIDL under the CARES Act, an applicant had to have suffered "substantial economic injury" from COVID-19, based on an actual economic injury determined by the SBA. EIDLs could only be used for certain specified purposes, such as for payroll and other similar costs, increased costs due to supply chain interruption, to pay obligations that could not be met due to revenue loss, and for other similar uses.

      d.    The CARES Act also permitted applications to request an advance of up to $10,000 to pay allowable working capital needs. Advances were expected to be paid by the SBA within three days of the submission of an EIDL application to the SBA, provided the application contained a self-certification under penalty of perjury of the applicant's eligibility for an EIDL.

      e.    Individuals were permitted to submit EIDL applications electronically through the SBA's website, which recorded various information about the application and applicant. Applicants received email notifications at various points in the application process, including, if applicable, when the SBA extended an offer and when the SBA approved the loan.

### The Scheme to Submit Fraudulent Applications

    10.    Based on my review of records received from the SBA, I have learned, among other things, the following:

      a.    For each EIDL application submitted, the SBA collects the IP address from which the application was submitted.

      b.    SBA records show that from on or about June 30, 2020, through May 18, 2021, approximately 95 EIDL applications were created from a particular IP address (the "Common IP Address"), including each of the Fraudulent Applications. In total, 23 of the 95 EIDL applications created from the Common IP Address were funded by the SBA for a total of more than $1.2 million.

      c.    The Fraudulent Applications are listed below, along with the business category, gross revenues, and number of employees listed on each respective application:

| Business Owner and Primary Contact[1] | Business Category | Gross Revenue | Number of Employees | Date and Time Loan Application Created |
|---|---|---|---|---|
| Denise Gant | Eating & Drinking | $157,000.00 | 11 | 8/7/2020 1:19 p.m. |
| Ebony Simon | Hair & Nail Salon | $152,000.00 | 10 | 8/7/2020 7:22 p.m. |
| Phya Scott | Hair & Nail Salon | $152,000.00 | 11 | 7/29/2020 11:13 p.m. |
| Priscilla Jackson | Educational Services | $168,000.00 | 12 | 7/31/2020 5:05 p.m. |
| Sharon Charles | Health Services | $151,300.00 | 5 | 8/4/2020 1:10 p.m. |
| Yolanda Lawrence | Hair & Nail Salon | $187,000.00 | 9 | 6/30/2020 8:17 p.m. |
| Yolanda Ratcliff | Hair & Nail Salon | $160,000.00 | 10 | 7/29/2020 5:44 p.m. |
| Zhane Ratcliff | Hair & Nail Salon | $154,000.00 | 11 | 7/29/2020 6:01 p.m. |

11.   Based on my review of records obtained from internet service providers and phone carriers, I have learned, among other things, that from approximately February 22, 2020, to at least approximately January 21, 2022, the Common IP Address was assigned to "Rodney Smith" at a certain address in Brooklyn, New York (the "SMITH Address"), and the same customer account listed a particular phone number ending in 5186 (the "SMITH Phone number") and a particular email address (the "SMITH Email Address"). The SMITH Phone number has been assigned to "Rodney Smith" since approximately 2017. The SMITH Email Address was created in or about 2004 and is subscribed to in the name of "Remy Jones," which I believe, based on my review of criminal history records, is an alias associated with RODNEY SMITH, the defendant.

12.   Based on my review of bank records and records from Cash App, a mobile payment application, I have learned, among other things, the following:

---

[1] Based on my review of records received from the SBA, I have learned, among other things, that each of the Fraudulent Applications listed a "primary contact" name and a "company legal name." Each of the Fraudulent Applications listed the same name in both fields. For example, the same application that listed "Yolanda Ratcliff" as the primary contact also listed "Yolanda Ratcliff" as the company legal name.

a.   On or about August 5, 2020, ZHANE RATCLIFF, the defendant, sent approximately $5,000 to YOLANDA RATCLIFF, the defendant, with the message "Loan." As set forth below, ZHANE RATCLIFF received her EIDL approximately one day earlier, on or about August 4, 2020.

b.   On or about August 7, 2020, PRISCILLA JACKSON, the defendant, sent approximately $5,000 to YOLANDA RATCLIFF with the message "Thank you so muc[h]." As set forth below, JACKSON received her EIDL approximately one day earlier, on or about August 6, 2020.

c.   On or about August 7, 2020, August 19, 2020, and August 21, 2020, PHYA SCOTT, the defendant, sent three sums of money totaling $10,000 to RODNEY SMITH, the defendant.[2] Each transfer was accompanied with the message "business." As set forth above, SCOTT received her EIDL loan on or about August 4, 2020.[3]

d.   On or about August 10, 2020, YOLANDA RATCLIFF sent three sums of money totaling $5,000 to SMITH. As set forth below, YOLANDA RATCLIFF received her EIDL approximately nine days earlier, on or about August 1, 2020.

e.   Between on or about August 12, 2020, and on or about August 14, 2020, DENISE GANT, the defendant, transferred three sums of money totaling approximately $5,000 to YOLANDA RATCLIFF.

---

[2] Records from Cash App show that on or about August 7, 2020, there was a declined transfer from PHYA SCOTT, the defendant, to RODNEY SMITH, the defendant, for $5,000 with the message "business advisor."

[3] The financial transactions described in Paragraphs 12(a)-(b) above are reflected in bank statements for PRISCILLA JACKSON and ZHANE RATCLIFF, the defendants, respectively. The financial transaction described in Paragraph 12(c) above is reflected in records for Cash App accounts believed to be used by PHYA SCOTT, the defendant, and SMITH, based on the name and date of birth for each Cash App Account matching those for SCOTT and SMITH, respectively, in their EIDL applications. Records for the SMITH Cash App show that on or about February 26, 2022, after the financial transactions described herein and in response to receiving information from SMITH, Cash App determined that SMITH's Cash App account had been compromised, and Cash App secured the account for SMITH. The financial transaction described in Paragraph 12(d) above is reflected in records for Cash App accounts believed to be used by YOLANDA RATCLIFF and RODNEY SMITH, the defendants, based on the name and date of birth for each Cash App Account matching those for YOLANDA RATCLIFF and SMITH, respectively, in their EIDL applications.

As set forth below, GANT received her EIDL approximately one day earlier, on August 11, 2020.

13. Based on my review of SBA records, bank records, phone carrier records,[4] and my review of another law enforcement officer's analysis of those records, I have learned, among other things, that several of the defendants were in regular contact around the dates on which their Fraudulent Applications were submitted, which suggests that they were working together to submit the Fraudulent Applications. In particular, I have learned the following:

a. On or about July 29, 2020, *i.e.*, the day that applications for YOLANDA RATCLIFF, ZHANE RATCLIFF, and PHYA SCOTT, the defendants, were submitted, YOLANDA RATCLIFF and SCOTT had telephone contact approximately 24 times. Prior to that day, YOLANDA RATCLIFF and SCOTT had telephone contact approximately 7 times that month, approximately 4 times in June 2020, and approximately 16 times in May 2020. Also on July 29, 2020, SCOTT and ZHANE RATCLIFF had telephone contact once. The same day, SCOTT had telephone contact with SMITH approximately three times. SCOTT had not previously had telephone contact with SMITH. SCOTT also had telephone contact with SMITH once on July 30, 2020 and multiple times in August 2020, including once on August 7, 2020, *i.e.*, one of the days that SCOTT sent money to SMITH, as set forth below.

b. On or about the same day, July 29, 2020, YOLANDA RATCLIFF had telephone contact with SMITH approximately 83 times, approximately 28 times the next day, and approximately 41 times the following day. Prior to that, YOLANDA RATCLIFF and SMITH had telephone contact in July 2020 approximately 3 times, zero times in June 2020, and approximately 13 times in May 2020.

c. On or about August 7, 2020, *i.e.*, the day JACKSON sent $5,000 to YOLANDA RATCLIFF, JACKSON had a text message communication with RATCLIFF. Prior to that date, JACKSON's most recent telephone contact with Yolanda RATCLIFF was on July 25, 2020.

14. Based on my review of text messages exchanges between RODNEY SMITH and YOLANDA RATCLIFF and between SMITH and PHYA SCOTT, the defendants, obtained pursuant to a judicially authorized

---

[4] The phone numbers associated with YOLANDA RATCLIFF, ZHANE RATCLIFF, PHYA SCOTT, and PRISCILLA JACKSON, the defendants, in this paragraph were listed on each individual defendants' EIDL application. The phone number associated with RODNEY SMITH, the defendant, is the SMITH Phone Number, discussed above.

search warrant, I have learned, among other things, that between
at least in or about July 2020 and in or about October 2020, SMITH,
YOLANDA RATCLIFF, and SCOTT had several communications about
submitting EIDL applications and receiving a fee to do so. For
example:

      a.  On or about July 29, 2020, SMITH sent YOLANDA
RATCLIFF a message saying the following:

      Name
      Address
      County
      Phone
      SSN
      Name of bank
      Acct
      Routing
      Dob
      Place of birth
      Email
      Side job

Based on my training and experience and my involvement in this
investigation, I believe this message reflects SMITH asking
YOLANDA RATCLIFF to provide responses to this message so that he
can submit an EIDL application with this information on YOLANDA
RATCLIFF's behalf (the "Requested Information").

      b.  In response, later on the same day, YOLANDA
RATCLIFF sent messages to SMITH with the Requested Information,
for herself and ZHANE RATCLIFF. In response to the request for her
"side job," YOLANDA RATCLIFF provided "cooking/ catering." Later
on the same day, SMITH sent a message to YOLANDA RATCLIFF saying,
among other things, "Also I put u down for Hair n Nails, they
didn't have the option for Cooking." Based on my training and
experience and my involvement in this investigation, I believe
this message reflects SMITH saying he listed YOLANDA RATCLIFF's
business category as Hair & Nail Salon on her EIDL application
instead of the description she provided, "cooking/ catering." As
set forth herein, the EIDL application for YOLANDA RATCLIFF – along
with several of the other Fraudulent Applications – in fact listed
the business category "Hair & Nail Salon."

      c.  Later on or about the same day, July 29, 2020, SMITH
sent YOLANDA RATCLIFF a message saying, "Better hit ur ppl b4 this
shit is dead, not for just anyone tho, just close Ppl." Based on
my training and experience and my involvement in this
investigation, I believe this message reflects SMITH saying that

YOLANDA RATCLIFF should find other individuals who will submit EIDL applications through SMITH but, in order to avoid disclosure that might implicate them in a crime, YOLANDA RATCLIFF should communicate about their scheme only with people close to her, *i.e.*, "just close Ppl."

        d.    On or about July 29, 2020, SCOTT sent SMITH the Requested Information for her application. SMITH asked a few follow up questions and then told SCOTT that he was "able to put it in tonight" and that SCOTT should "[l]ook for an Email tomorrow" and inform SMITH when she received the email. As set forth below, SBA records show that on or about the same day, July 29, 2020, an EIDL application was submitted for SCOTT from the Common IP Address.

        e.    On or about July 31, 2020, YOLANDA RATCLIFF sent to SMITH the Requested Information for PRISCILLA JACKSON, the defendant, and two other individuals. Later, on or about August 5, 2020, YOLANDA RATCLIFF sent messages to SMITH saying, among other things, "Priscilla signed hers" and "Still waiting on Priscilla money." On or about August 7, 2020, YOLANDA RATCLIFF sent a message to SMITH saying, "Priscilla sent me the money 🥇" and "I'll give it to you Monday." As described above, JACKSON sent $5,000 to YOLANDA RATCLIFF on or about August 7, 2020.

        f.    On or about August 5, 2020, SMITH told SCOTT that "this is the last few days to apply for the Loan so if you [know] anyone else interested[,] it has to happen ASAP." The following day, SCOTT sent the Requested Information for three more individuals.

        g.    On or about August 5, 2020, SMITH sent a message to YOLANDA RATCLIFF saying "Hey Phya sent me 2 ppl so u got PC coming from her if it goes thru." Based on my training and experience and my involvement in this investigation, I believe this message reflects SMITH saying that SCOTT has recruited two individuals to this scheme to submit fraudulent applications and, if the applications are granted and the loans disbursed, YOLANDA RATCLIFF will receive some compensation for recruiting SCOTT.

        h.    On or about August 7, 2020, YOLANDA RATCLIFF sent to SMITH the Requested Information for DENISE GANT, the defendant. In the message, YOLANDA RATCLIFF spelled GANT's last name as "Gant." Later the same day, YOLANDA RATCLIFF sent a message to SMITH saying, "You spelled Denise last name wrong" and "She's afraid to call." As set forth below, the EIDL application for GANT in fact incorrectly listed her last name as "Grant." SMITH responded saying, "I don't think the spelling will be a problem

bcuz her SS# should tell it all." Soon afterwards, YOLANDA RATCLIFF responded saying "Denise got approved and signed."

      i.   On or about August 7, 2020, YOLANDA RATCLIFF sent to SMITH the Requested Information for EBONY SIMON, the defendant. The next day, on or about August 8, 2020, YOLANDA RATCLIFF sent a message to SMITH saying, "Ebony is approved and signed." On or about August 11, 2020, YOLANDA RATCLIFF sent a message to Smith saying, "Ebony want you to meet with her today."

      j.   On or about August 7, 2020, SMITH asked SCOTT if she was going to give him the "5k" that day. Later that same day, SMITH said he "got it," which, I believe, means the requested payment. As described above, SCOTT sent SMITH payment on or about August 7, 2020.

      k.   On or about August 9, 2020, SMITH sent a message to YOLANDA RATCLIFF suggesting that she take a bigger take of the fraud proceeds than what they had previously agreed, which appears to be $500. Specifically, SMITH wrote, "why don't u start telling ppl that it's 6k and u take the 1 off top plus the $500 🤑."[5]

15. Based on my review of records received from the SBA, I have learned, among other things, that the SBA required that each applicant disclose whether anyone assisted them in preparing their application, and whether or not that person was paid a fee. None of the Applying Defendants disclosed that RODNEY SMITH, the defendant, or anyone else assisted them in applying for an EIDL.

16. As discussed in greater detail below, many of the loans disbursed by the SBA based on the Fraudulent Applications were sent via Automated Clearing House ("ACH") transfer to a certain

---

[5] Based on my review of the text message communications, which are discussed in greater detail above, I believe there may be others involved in the scheme to submit the Fraudulent Applications beyond the defendants charged herein. For example, RODNEY SMITH, the defendant, references "my ppl" offering a particular amount of money for people being recruited into the scheme, and YOLANDA RATCLIFF, the defendant, references SMITH sending identifying information for another person to "[his] boy so he can get started," both of which may be references to others being involved in submitting the Fraudulent Applications and others from the Common IP Address. As also discussed above, all of the Fraudulent Applications, as well as numerous other EIDL applications submitted on behalf of others, were submitted to the SBA from the Common IP Address.

financial institution ("Financial Institution-1").[6] Based on my communications with employees of Financial Institution-1, I have learned, among other things, that Financial Institution-1 is headquartered in Manhattan, New York, and that during the relevant period, when ACH transfers were sent to accounts at Financial Institution-1, Financial Institution-1's process of reviewing batches of those ACH transfers and disbursing them into the destination accounts involved the transmission of wire communications between Manhattan and servers located in New Jersey.

17.   As set forth above, the Fraudulent Applications were submitted from the Common IP Address, which subscriber records show was associated with the SMITH Address in Brooklyn, New York. Based on my communications with an employee of the SBA, I have learned, among other things, that the SBA received electronic loan applications on one of three different servers, which are located in Virginia, Washington, and Iowa. Based on my training and experience, electronic communications between Brooklyn and any of the states where the SBA maintained relevant servers would have traveled through or over the waters of the Eastern District of New York, which are within the area comprising this judicial district.

## DENISE GANT's Fraudulent EIDL Application

18.   Based on my review of records received from the SBA, email provider records, and phone carrier records, I have learned, among other things, the following:

      a.   On or about August 7, 2020, an EIDL application was submitted to the SBA, seeking an EIDL for a sole proprietorship under the name "Denise A Grant" (the "GANT EIDL Application"). As set forth above, in a text message exchange, RODNEY SMITH, the defendant, acknowledged misspelling GANT's name on her EIDL application.

      b.   The GANT EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

---

[6] Based on my review of publicly available information, I have learned that Financial Institution-1 is a credit union for which only certain categories of individuals are eligible to open accounts, including but not limited to employees of the City of New York, and Financial Institution-1 required proof of eligibility in order to open an account.

c.   The GANT EIDL Application claimed that the "Denise A Grant" sole proprietorship was 100% owned by DENISE GANT, the defendant.

d.   The GANT EIDL Application claimed, among other things, that the "Denise A Grant" sole proprietorship was established on November 21, 2018, was an "Eating & Drinking Places" and "Catering" business, had 11 employees, earned $157,000 in gross revenues during the 12-month period ending January 31, 2020, and incurred $52,000 in cost of goods sold during the 12-month period ending January 31, 2020.

e.   The GANT EIDL Application directed that the loan payment be sent to a certain account in GANT's name (the "GANT Checking Account") at a certain financial institution ("Financial Institution-2").

f.   The GANT EIDL Application listed a certain phone number ending in 1313 as GANT's contact number (the "GANT Phone Number"). Phone carrier records show that the GANT Phone Number has been assigned to "Denise A Gant" since approximately April 2019.

g.   The GANT EIDL Application listed a certain email address (the "GANT Email Address"). Email provider records show that the GANT Email Address was created in or about 2010 and is subscribed to in the name of GANT. Email provider records show that GANT listed the GANT Phone Number as the recovery phone number for the GANT Email Address.

h.   The GANT EIDL Application was submitted from the Common IP Address.

i.   On or about August 8, 2020, the SBA approved a $52,500 loan based on the GANT EIDL Application.[7]

---

[7] Based on my review of text message exchanges, SBA records, and criminal history records, I have learned, among other things, that YOLANDA RATCLIFF, the defendant, provided to RODNEY SMITH, the defendant, a particular social security number for DENISE GANT, the defendant (the "GANT Social Security Number"). The GANT Social Security Number matches the social security number for GANT listed in criminal history records for GANT and records for the GANT Bank Account. On the Gant EIDL Application, SMITH listed the GANT Social Security Number as the "EIN/SSN for Sole Proprietorship." However, SMITH separately and incorrectly included one wrong digit in the social security number when listing GANT's personal information as the owner of the business applying for the loan.

19.   Based   on   my   review   of   records   from   Financial
Institution-2, I have learned, among other things, the following:

a.   On or about April 6, 2010, DENISE GANT, the
defendant, opened the GANT Checking Account.

b.   The GANT Checking Account regularly received
payments labeled "payroll" from the City of New York. Statements
for the GANT Checking Account reflect that GANT's principal source
of earnings during the 12-month period ending January 31, 2020 was
her job with the City of New York. Statements for the GANT Checking
Account do not reflect any other significant, regular deposits
during the 12-month period ending January 31, 2020, that are
consistent with the operation of a sole proprietorship that
purportedly earned approximately $157,000 in revenue during that
period.

c.   On or about August 11, 2020, the GANT Checking
Account received a payment from the SBA in the amount of $52,400.[8]
Immediately before receiving this payment, the balance in the GANT
Checking Account was approximately $10,223.56. As set forth above,
soon after receiving her EIDL disbursement, GANT transferred
approximately $5,000 to YOLANDA RATCLIFF, the defendant. On or
about August 12, 2020, GANT transferred approximately $44,000 to
a savings account she controlled at Financial Institution-2.

20.   Based on my review of tax filings for DENISE GANT, the
defendant, I know, among other things, that for tax years 2019,
2020, and 2021, the only income GANT reported to the Internal
Revenue Service ("IRS") was her income from the City of New York.
GANT did not report any income from, or file a Schedule C, Profit
or Loss from Business, for, any sole proprietorship in her name.

21.   Based on my review of records from the New York State
Department of Labor ("NYS DOL"), I have learned that the NYS DOL
does not have records that DENISE GANT, the defendant, or any sole
proprietorship using her name in New York State, had any employees
or paid any wages to employees during 2019 or 2020, contrary to
GANT's claim in the GANT EIDL Application that her business
employed 11 people.

---

[8] Based on my review of information from the SBA's website about
the EIDL program, I know that for EIDLs greater than $25,000, the
SBA charged a one-time $100 fee in order to file a lien on the
borrower's business assets.

## <u>EBONY SIMON's Fraudulent EIDL Application</u>

22.   Based on my review of records received from the SBA and an email provider, I have learned, among other things, the following:

a.   On or about August 7, 2020, an EIDL application was submitted to the SBA, seeking an EIDL for a sole proprietorship in the name of EBONY SIMON, the defendant (the "SIMON EIDL Application").

b.   The SIMON EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

c.   The SIMON EIDL Application claimed that the sole proprietorship was 100% owned by SIMON.

d.   The SIMON EIDL Application claimed, among other things, that the sole proprietorship was established on October 22, 2018, was a "Hair & Nail Salon," had 10 employees, earned $152,000 in gross revenues during the 12-month period ending January 31, 2020, and incurred $45,000 in cost of goods sold during the 12-month period ending January 31, 2020.

e.   The SIMON EIDL Application directed that the loan payment be sent to a certain account in SIMON's name (the "SIMON Checking Account") at Financial Institution-1.

f.   The SIMON EIDL Application listed a certain email address (the "SIMON Email Address"). Email provider records show that the SIMON Email Address was created in or about 2011 and is subscribed to in the name of SIMON.

g.   The SIMON EIDL Application was submitted from the Common IP Address.

h.   On or about August 9, 2020, the SBA approved the SIMON EIDL Application, and issued a payment to the SIMON Checking Account in the amount of $53,500.

23.   Based on my review of records from Financial Institution-1, I have learned, among other things, the following:

a.   In or about March 2013, EBONY SIMON, the defendant, opened the SIMON Checking Account. Financial Institution-1's files for the SIMON Checking Account include a copy of SIMON's New York State driver's license.

    b.   The SIMON Checking Account regularly received payments labeled "payroll" from the City of New York.

    c.   On or about August 11, 2020, the SIMON Checking Account received an ACH transfer from the SBA in the amount of $53,400.00. Immediately before receiving this transfer, the balance in the SIMON Checking Account was $74.78.

    d.   In the period soon after the EIDL was disbursed, bank records show that, on or about August 11, 2020, SIMON withdrew $10,000 in cash; on or about September 9, 2020, SIMON made online purchases from a luxury goods retailer totaling approximately $3,450; and, on or about September 9, 2020, SIMON purchased a $16,000 money order made out to herself and made a $5,000 cash withdrawal, among other purchases.

    e.   Statements for the SIMON Checking Account reflect that SIMON's principal source of earnings during the 12-month period ending January 31, 2020 was her job with the NYPD. Statements for the SIMON Checking Account do not reflect any other significant deposits during the 12-month period ending January 31, 2020, and are therefore not consistent with the operation of a sole proprietorship that purportedly earned approximately $152,000 in revenue during that period.

24. Based on my review of records from the New York Department of State and publicly available information, I have learned, among other things, the following:

    a.   In New York state, an individual is required to obtain a license from the New York Department of State to work on nail appearance (a nail specialty license); practice nail or hair styling, waxing, and beauty treatment (a cosmetology license); or work or train as a barber (a master or apprentice barber license).

    b.   EBONY SIMON, the defendant, is not licensed to work as a barber, cosmetologist, or nail specialist and was not during the relevant period, contrary to her representation on the SIMON EIDL Application that she was the sole owner of a profitable Hair & Nail Salon.

25. Based on my review of tax filings for EBONY SIMON, the defendant, I know, among other things, that SIMON filed a tax return for tax year 2019 but did not file for tax years 2020 or 2021. For tax year 2019, which covered much of the period when SIMON claimed that her sole proprietorship earned $152,000, SIMON claimed only $33,711 in income, which is consistent with the wages that NYPD reported paying her in that year. SIMON did not report

any income from any sole proprietorship in her name in 2019, and did not file any separate business return for a sole proprietorship in her name for 2019, 2020, or 2021.

26. Based on my review of records from the NYS DOL, I have learned that the NYS DOL does not have records that EBONY SIMON, the defendant, or any sole proprietorship using her name in New York State, had any employees or paid any wages to employees during 2019 or 2020, contrary to SIMON's claim in the SIMON EIDL Application that her business employed 10 people.

**PHYA SCOTT's Fraudulent EIDL Application**

27. Based on my review of records received from the SBA and an email provider, I have learned, among other things, the following:

    a. On or about July 29, 2020, an EIDL application was submitted to the SBA, seeking an EIDL for a sole proprietorship in the name of PHYA SCOTT, the defendant (the "SCOTT EIDL Application").

    b. The SCOTT EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

    c. The SCOTT EIDL Application claimed that the sole proprietorship was 100% owned by SCOTT.

    d. The SCOTT EIDL Application claimed, among other things, that the sole proprietorship was established on March 11, 2018, was a "Hair & Nail Salon,"[9] had 11 employees, earned $152,000 in gross revenues during the 12-month period ending January 31, 2020, and incurred $41,000 in cost of goods sold during the 12-month period ending January 31, 2020.

    e. The SCOTT EIDL Application directed that the loan payment be sent to a certain account in the name of SCOTT (the "SCOTT Checking Account") at a certain financial institution ("Financial Institution-3").[10]

---

[9] Based on my review of records from the New York Department of State, I have learned that PHYA SCOTT, the defendant, was licensed by the State of New York as a cosmetologist from at least 1998 through the present.
[10] The bank account number listed on the SCOTT EIDL Application is missing one digit from the correct bank account number for the

      f.    The SCOTT EIDL Application listed a certain email address (the "SCOTT Email Address"). Email provider records show that the SCOTT Email Address was created in or about 2014 and is subscribed to in the name of SCOTT.

      g.    The SCOTT EIDL Application was submitted from the Common IP Address.

      h.    On or about August 1, 2020, the SBA approved the SCOTT EIDL Application, and issued a payment to the SCOTT Checking Account in the amount of $55,500.

28.  Based on my review of records from Financial Institution-3, I have learned, among other things, the following:

      a.    In or about January 2007, PHYA SCOTT, the defendant, opened the SCOTT Checking Account. Financial Institution-3's files for the SCOTT Checking Account list SCOTT's employer as the "NYC POLICE DEPT" and list the same phone number, social security number, and date of birth listed on the SCOTT EIDL Application.

      b.    The SCOTT Checking Account regularly received payments labeled "payroll" from the City of New York.

      c.    On or about August 4, 2020, the SCOTT Checking Account received a payment from the SBA in the amount of $55,400. Immediately before receiving this transfer, the balance in the SCOTT Checking Account was $1,125.91.

      d.    In the period soon after the EIDL was disbursed, bank records show transfers totaling $10,000 to RODNEY SMITH, the defendant, as set forth above.

      e.    Statements for the SCOTT Checking Account reflect that SCOTT's principal source of earnings during the 12-month period ending January 31, 2020 was her job with the NYPD. Statements for the SCOTT Checking Account do not reflect any other significant deposits during the 12-month period ending January 31,

---

SCOTT Checking Account at Financial Institution-3. However, given that, as discussed below, the EIDL was ultimately disbursed to the SCOTT Checking Account and the identifying information for the SCOTT EIDL Application and the SCOTT Checking Account match, I believe, based on my training and experience and my participation in this investigation, that SCOTT may have corrected this error after the application was submitted or otherwise transmitted the correct information to SBA.

2020, and are therefore not consistent with the operation of a sole proprietorship that purportedly earned approximately $152,000 in revenue during that period.

29.   Based on my review of tax filings for PHYA SCOTT, the defendant, I know, among other things, that SCOTT filed a personal tax return for tax year 2019, but did not file a personal tax return for tax year 2020 or 2021, and did not file any separate business return for a sole proprietorship in her name for 2019, 2020, or 2021. For tax year 2019, SCOTT reported to the IRS her salary from the NYPD and filed a Schedule C for a sole proprietorship in her own name. For the sole proprietorship, SCOTT listed the "principal business or profession" as "CONSULTANT." For this business, SCOTT reported gross receipts or sales of $6,117 and expenses of $41,754 for a total loss of $35,637. These sales are far short of the gross receipts of $152,000 that she reported on the SCOTT EIDL Application. SCOTT did not file any other Schedule C in connection with the sole proprietorship in her own name.

30.   Based on my review of records from the NYS DOL, I have learned that the NYS DOL does not have records that PHYA SCOTT, the defendant, or any sole proprietorship using her name in New York State, had any employees or paid any wages to employees during 2019 or 2020, contrary to SCOTT's claim in the SCOTT EIDL Application that her business employed 11 people.

## PRISCILLA JACKSON's Fraudulent EIDL Application

31.   Based on my review of records received from the SBA, I have learned, among other things, the following:

a.   On or about July 31, 2020, an EIDL application was submitted to the SBA for a sole proprietorship in the name of PRISCILLA JACKSON, the defendant (the "JACKSON EIDL Application").

b.   The JACKSON EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

c.   The JACKSON EIDL Application claimed that her sole proprietorship was 100% owned by JACKSON.

d.   The JACKSON EIDL Application claimed, among other things, that her sole proprietorship was established on May 2, 2018, was in the business of "Educational Services - Daycare," had 12 employees, earned $168,000 in gross revenues during the 12-

month period ending January 31, 2020, and incurred $48,000 in cost of goods sold during the 12-month period ending January 31, 2020.

      e.   The JACKSON EIDL Application was submitted from the Common IP Address.

      f.   The JACKSON EIDL Application directed that the loan payment be sent to a certain account in JACKSON's name (the "JACKSON Bank Account") at Financial Institution-1.

      g.   The JACKSON EIDL Application listed a certain email address (the "JACKSON Email Address"), which, based on my review of subscriber records, I know was subscribed to JACKSON and created in 2008.

      h.   On or about August 4, 2020, the SBA emailed JACKSON at the JACKSON Email Address and requested that JACKSON sign her loan documents. That same day, JACKSON, using the JACKSON Email Address, replied that she would sign her loan documents. That same day, JACKSON signed her loan documents.

      i.   On or about August 4, 2020, the SBA approved a $60,000 loan based on the JACKSON EIDL Application.

32.   Based on my review of records from Financial Institution-1, I have learned, among other things, the following:

      a.   The JACKSON Bank Account regularly received payments labeled "DIR DEP" [*i.e.* "direct deposit"] from the MTA Bus Company.

      b.   On or about August 6, 2020, the JACKSON Bank Account received an ACH transfer from the SBA in the amount of $59,900. Immediately before receiving this transfer, the balance in the JACKSON Bank Account was approximately $5,016.87. As discussed above, JACKSON transferred $5,000 to YOLANDA RATCLIFF the day after receiving her loan.

33.   Based on my review of tax filings for PRISCILLA JACKSON, the defendant, I have learned, among other things, the following:

      a.   In tax year 2019, JACKSON reported adjusted gross income of $51,753, which came from her wages from the MTA.

      b.   In tax year 2019, JACKSON did not file a Schedule C in connection with the sole proprietorship in her own name.

34.    Based on my review of records from the NYS DOL, I have learned that the NYS DOL does not have records that PRISCILLA JACKSON, the defendant, had any employees or paid any wages to employees during 2019 or 2020, contrary to JACKSON's claim in the JACKSON EIDL Application that her business employed 12 people.

35.    Based on my review of the website of the New York State Office of Children and Family Services (the "OCFS"), I have learned, among other things, that any child day care program planning to serve three or more children for more than three hours a day on a regular basis must obtain a license or registration.

36.    Based on my review of records from the OCFS, I have learned that the OCFS does not have any records for PRISCILLA JACKSON, the defendant, from January 2020 through the present.[11]

### SHARON CHARLES's Fraudulent EIDL Application

37.    Based on my review of records received from the SBA, I have learned, among other things, the following:

a.    On or about August 4, 2020, an EIDL application was submitted to the SBA for a sole proprietorship in the name of SHARON CHARLES, the defendant (the "CHARLES EIDL Application").

b.    The CHARLES EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

c.    The CHARLES EIDL Application claimed that her sole proprietorship was 100% owned by CHARLES.

d.    The CHARLES EIDL Application claimed, among other things, that her sole proprietorship was established on January 25, 2017, was in the business of "Health Services," had 5 employees, earned $151,300 in gross revenues during the 12-month period ending January 31, 2020, and incurred $52,500 in cost of goods sold during the 12-month period ending January 31, 2020.

e.    The CHARLES EIDL Application was submitted from the Common IP Address.

---

[11] Based on my review of records from a law enforcement database, I have learned that PRISCILLA JACKSON, the defendant, applied to the OCFS for a child day care license in 2014.

f.    The CHARLES EIDL Application directed that the loan payment be sent to a certain account in CHARLES's name (the "CHARLES Bank Account") at Financial Institution-1.

g.    The CHARLES EIDL Application listed a certain email address (the "CHARLES Email Address"), which, based on my review of subscriber records, I know was subscribed to "S CH" and created in 2016. The CHARLES Email Address was also used to open the CHARLES Bank Account in 2018. Based on the foregoing, I believe the CHARLES Email Address belongs to CHARLES.

h.    On or about August 6, 2020, the SBA approved a $49,400 loan based on the CHARLES EIDL Application.

38.   Based on my review of records from Financial Institution-1, I have learned, among other things, the following:

a.    On or about August 7, 2020, the CHARLES Bank Account received an ACH transfer from the SBA in the amount of $49,300. Immediately before receiving this transfer, the balance in the CHARLES Bank Account was approximately $176.13. On or about August 12, 2020, CHARLES withdrew $5,000 in cash.

b.    Statements for the CHARLES Bank Account reflect that, during 2019, CHARLES received much less than $151,300 in total deposits, and that a significant majority of the deposits were bimonthly payments of $150. These deposits are therefore inconsistent with the operation of a sole proprietorship that earned approximately $151,300 in gross revenues.

39.   Based on my review of tax filings for SHARON CHARLES, the defendant, I have learned, among other things, the following:

a.    In tax year 2019, CHARLES reported adjusted gross income of $94,280, which primarily came from her wages from the Fund for the City of New York.

b.    In tax year 2019, CHARLES did not file a Schedule C in connection with a sole proprietorship in her own name.[12]

---

[12] In tax year 2019, SHARON CHARLES, the defendant, filed a Schedule C form for the "consulting" business Sharon Charles-Hewitt Consulting LLC. CHARLES indicated that this business earned $4,800 in gross income and had $2,861 in total expenses. On or about July 17, 2020, CHARLES also submitted to the SBA an EIDL application for Sharon Charles-Hewitt Consulting Business. On or about February 12, 2021, CHARLES cancelled the loan application.

40.   Based on my review of records from the NYS DOL, I have learned that the NYS DOL does not have records that SHARON CHARLES, the defendant, had any employees or paid any wages to employees during 2019 or 2020, contrary to CHARLES's claim in the CHARLES EIDL Application that her business employed 5 people.

### YOLANDA LAWRENCE's Fraudulent EIDL Application

41.   Based on my review of records received from the SBA, I have learned, among other things, the following:

a.   On or about June 30, 2020, an EIDL application was submitted to the SBA for a sole proprietorship in the name of YOLANDA LAWRENCE, the defendant (the "LAWRENCE EIDL Application").

b.   The LAWRENCE EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

c.   The LAWRENCE EIDL Application claimed that her sole proprietorship was 100% owned by LAWRENCE.

d.   The LAWRENCE EIDL Application claimed, among other things, that her sole proprietorship was established on April 10, 2012, was in the business of "Personal Services – Hair & Nail Salon," had 9 employees, earned $187,000 in gross revenues during the 12-month period ending January 31, 2020, and incurred $59,500 in cost of goods sold during the 12-month period ending January 31, 2020.

e.   The LAWRENCE EIDL Application was submitted from the Common IP Address.

f.   The LAWRENCE EIDL Application directed that the loan payment be sent to a certain account in LAWRENCE's name ("LAWRENCE Bank Account-1") at a certain financial institution ("Financial Institution-4").

g.   On or about July 1, 2020, LAWRENCE digitally signed the loan application associated with the LAWRENCE EIDL Application from a certain IP address beginning with the numbers "47" (the "47 IP Address").

h.   The LAWRENCE EIDL Application listed a certain email address ("LAWRENCE Email Address-1"), which, based on my review of subscriber records, I know was subscribed to LAWRENCE and created in 2009. The subscriber information for LAWRENCE Email Address-1 also listed the following: (i) a recovery phone number

which was also listed on the LAWRENCE EIDL Application (the "LAWRENCE Phone Number"), (ii) dates on which LAWRENCE Email Address-1 was accessed from the 47 IP Address, and (iii) a recovery email address ("LAWRENCE Email Address-2").

   i. On or about July 1, 2020, the SBA approved a $9,000 advance on the LAWRENCE EIDL Application and a $54,800 loan based on the LAWRENCE EIDL Application.

  42. Based on my review of records received from the SBA, I have learned, among other things, the following:

   a. On or about January 26, 2021, YOLANDA LAWRENCE, the defendant, using the 47 IP Address, submitted an EIDL application to the SBA for a sole proprietorship in the name of Beautiful Are the Gifts (the "Beautiful Are the Gifts EIDL Application"). The Beautiful Are the Gifts EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

   b. The Beautiful Are the Gifts EIDL Application claimed that the sole proprietorship was 100% owned by LAWRENCE. The Beautiful Are the Gifts EIDL Application claimed, among other things, that the sole proprietorship was established on April 1, 2008, was in the business of "Manufacturing," had 3 employees, earned $51,000 in gross revenues during the 12-month period ending January 31, 2020, and incurred $36,000 in cost of goods sold during the 12-month period ending January 31, 2020.

   c. The Beautiful Are the Gifts EIDL Application directed that the loan payment be sent to LAWRENCE Bank Account-1. The Beautiful Are the Gifts EIDL Application listed LAWRENCE Email Address-1.

   d. The SBA denied the Beautiful Are the Gifts EIDL Application.

   e. On or about January 29, 2021, YOLANDA LAWRENCE, the defendant, using the 47 IP Address, submitted an EIDL application to the SBA for a sole proprietorship in the name of Lady Braids (the "Lady Braids EIDL Application"). The Lady Braids EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

   f. The Lady Braids EIDL Application claimed that the sole proprietorship was 100% owned by LAWRENCE.

g.    The Lady Braids EIDL Application claimed, among other things, that the sole proprietorship was established on April 21, 2006, was in the business of "Personal Services – Hair & Nail Salon," had one employee, earned $30,000 in gross revenues during the 12-month period ending January 31, 2020, and incurred $21,500 in cost of goods sold during the 12-month period ending January 31, 2020.

h.    The Lady Braids Application directed that the loan payment be sent to a certain bank account in LAWRENCE's name which also listed LAWRENCE Email Address-2 (the "LAWRENCE Bank Account-2") at Financial Institution-1. The Lady Braids Application also listed LAWRENCE Email Address-2.

i.    The SBA denied the Lady Braids EIDL Application.

43.   Based on my review of records from Apple for an Apple iCloud account associated with LAWRENCE Email Address-1 and the LAWRENCE Phone Number, I know that the iCloud account associated with LAWRENCE Email Address-1 was accessed numerous times from the 47 IP Address.

44.   Based on my review of records from Cash App, I have learned, in substance and in part, that a Cash App account for YOLANDA LAWRENCE, the defendant, which lists LAWRENCE's date of birth, the last four digits of LAWRENCE's social security number, and LAWRENCE Email Address-2, was accessed from the 47 IP Address numerous times, including on or about June 30, 2020 and in or around January 2021.

45.   Based on my review of records from Financial Institution-4, I have learned, among other things, the following:

a.    On or about July 2, 2020, LAWRENCE Bank Account-1 received payments from the SBA in the amount of $9,000 and $54,700.

b.    After receiving the loan, during the rest of July 2020, LAWRENCE Bank Account-1 had withdrawals for, among other things, $5,000 at "Brooklyn Mitsubishi," over $1,000 at Macys, over $1,000 at Lacoste, and over $800 at Old Navy.

46.   Based on my review of tax filings for YOLANDA LAWRENCE, the defendant, I have learned, among other things, the following:

a.    In tax year 2019, LAWRENCE reported adjusted gross income of $39,265, which came from her wages from the City of New York.

b.    In tax year 2019, LAWRENCE did not file a Schedule C in connection with the sole proprietorship in her own name, Beautiful Are the Gifts, or Lady Braids.

47.    Based on my review of records from the NYS DOL, I have learned that the NYS DOL does not have records that YOLANDA LAWRENCE, the defendant, had any employees or paid any wages to employees during 2019 or 2020, contrary to LAWRENCE's claim in the LAWRENCE EIDL Application that her business employed 9 people.

48.    Based on my review of records from the New York State Department of State, I have learned, among other things, the following:

a.    There are no filings associated with Beautiful Are the Gifts or Lady Braids.

b.    From at least January 1, 2016 through the present, YOLANDA LAWRENCE, the defendant, was not licensed as a barber or cosmetologist.

## YOLANDA RATCLIFF's Fraudulent EIDL Application

49.    Based on my review of records received from the SBA, I have learned, among other things, the following:

a.    On or about July 29, 2020, an EIDL application was submitted to the SBA for a sole proprietorship in the name of YOLANDA RATCLIFF, the defendant (the "YOLANDA RATCLIFF EIDL Application").

b.    The YOLANDA RATCLIFF EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

c.    The YOLANDA RATCLIFF EIDL Application claimed that her sole proprietorship was 100% owned by YOLANDA RATCLIFF.

d.    The YOLANDA RATCLIFF EIDL Application claimed, among other things, that her sole proprietorship was established on June 6, 2018, was in the business of "Personal Services – Hair & Nail Salon," had 10 employees, earned $160,000 in gross revenues during the 12-month period ending January 31, 2020, and incurred $40,000 in cost of goods sold during the 12-month period ending January 31, 2020.

e.    The YOLANDA RATCLIFF EIDL Application was submitted from the Common IP Address.

       f.    The YOLANDA RATCLIFF EIDL Application directed that the loan payment be sent to a certain account in YOLANDA RATCLIFF's name (the "YOLANDA RATCLIFF Bank Account") at Financial Institution-2.

       g.    The YOLANDA RATCLIFF EIDL Application listed a certain email address (the "YOLANDA RATCLIFF Email Address"), which, based on my review of subscriber records, I know was subscribed to YOLANDA RATCLIFF and created in 2009.

       h.    On or about August 1, 2020, the SBA approved a $60,000 loan based on the YOLANDA RATCLIFF EIDL Application.

50.    Based on my review of records from Financial Institution-2, I have learned, among other things, the following:

       a.    On or about August 4, 2020, the YOLANDA RATCLIFF Bank Account received a payment from the SBA in the amount of $59,900. Immediately before receiving this transfer, the balance in the YOLANDA RATCLIFF Bank Account was approximately $282.49.

51.    Based on my review of tax filings for YOLANDA RATCLIFF, the defendant, I have learned, among other things, the following:

       a.    In tax year 2019, YOLANDA RATCLIFF reported adjusted gross income of $51,544, which came from her wages from the City of New York.

       b.    In tax year 2019, YOLANDA RATCLIFF did not file a Schedule C in connection with the sole proprietorship in her own name.

52.    Based on my review of records from the NYS DOL, I have learned that the NYS DOL does not have records that YOLANDA RATCLIFF, the defendant, had any employees or paid any wages to employees during 2019 or 2020, contrary to YOLANDA RATCLIFF's claim in the YOLANDA RATCLIFF EIDL Application that her business employed 10 people.

53.    Based on my review of records from the New York State Department of State, I have learned, among other things, that, from at least January 1, 2016 through the present, YOLANDA LAWRENCE, the defendant, was not licensed as a barber or cosmetologist.

## ZHANE RATCLIFF's Fraudulent EIDL Application

54.   Based on my review of records received from the SBA, I
have learned, among other things, the following:

  a.   On or about July 29, 2020, an EIDL application was
submitted to the SBA for a sole proprietorship in the name of ZHANE
RATCLIFF, the defendant (the "ZHANE RATCLIFF EIDL Application").

  b.   The ZHANE RATCLIFF EIDL Application contained a
certification under penalty of perjury that its contents were "true
and correct."

  c.   The ZHANE RATCLIFF EIDL Application claimed that
her sole proprietorship was 100% owned by ZHANE RATCLIFF.

  d.   The ZHANE RATCLIFF EIDL Application claimed, among
other things, that her sole proprietorship was established on
November 21, 2018, was in the business of "Personal Services –
Hair & Nail Salon," had 11 employees, earned $154,000 in gross
revenues during the 12-month period ending January 31, 2020, and
incurred $36,000 in cost of goods sold during the 12-month period
ending January 31, 2020.

  e.   The ZHANE RATCLIFF EIDL Application was submitted
from the Common IP Address.

  f.   The ZHANE RATCLIFF EIDL Application directed that
the loan payment be sent to a certain account in ZHANE RATCLIFF's
name (the "ZHANE RATCLIFF Bank Account") at Financial Institution-
1.

  g.   The ZHANE RATCLIFF EIDL Application listed a
certain email address (the "ZHANE RATCLIFF Email Address"), which,
based on my review of subscriber records, I know was subscribed to
ZHANE RATCLIFF and created in 2013.

  h.   On or about August 1, 2020, the SBA approved a
$59,000 loan based on the ZHANE RATCLIFF EIDL Application.

55.   Based on my review of records from Financial
Institution-1, I have learned, among other things, the following:

  a.   The ZHANE RATCLIFF Bank Account regularly received
payments labeled "payroll" from the City of New York.

  b.   On or about August 4, 2020, the ZHANE RATCLIFF Bank
Account received an ACH transfer from the SBA in the amount of

$58,900. Immediately before receiving this transfer, the balance in the ZHANE RATCLIFF Bank Account was approximately $592.61.

56. Based on my review of tax filings for ZHANE RATCLIFF, the defendant, I have learned, among other things, the following:

      a.   In tax year 2019, ZHANE RATCLIFF reported adjusted gross income of $64,242.

      b.   In tax year 2019, ZHANE RATCLIFF did not file a Schedule C in connection with a sole proprietorship in her own name.

      c.   ZHANE RATCLIFF did not file any tax return, including any Schedule C, for tax year 2020.

57. Based on my review of records from the NYS DOL, I have learned that the NYS DOL does not have records that ZHANE RATCLIFF, the defendant, had any employees or paid any wages to employees during 2019 or 2020, contrary to ZHANE RATCLIFF's claim in the ZHANE RATCLIFF EIDL Application that her business employed 11 people.

58. Based on my review of records from the New York State Department of State, I have learned, among other things, that, from at least January 1, 2016 through the present, ZHANE RATCLIFF, the defendant, was not licensed as a barber or cosmetologist.

WHEREFORE, deponent respectfully requests that warrants issue for the arrest of RODNEY SMITH, DENISE GANT, EBONY SIMON, PHYA SCOTT, PRISCILLA JACKSON, SHARON CHARLES, YOLANDA LAWRENCE,

YOLANDA RATCLIFF, and ZHANE RATCLIFF, the defendants, and that
they be imprisoned or bailed, as the case may be.


/s/ LaVale Jackson, with permission by SDA
LaVale Jackson
Special Agent
United States Attorney's Office for the
Southern District of New York


Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this
29th day of November 2022.


_____
THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK